# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JAMEEL FRAZIER,

     Plaintiff,

v.                                  Case No. 3:17-cv-1366-J-32MCR

SAFELITE GROUP, INC.,

     Defendant.

---

## O R D E R

This employment discrimination lawsuit is before the Court on Defendant Safelite Group, Inc.'s[1] motion for summary judgment (Doc. 12), to which Plaintiff Jameel Frazier responded (Doc. 15). With the Court's permission, the parties filed a reply and sur-reply. (Docs. 20, 22). On March 20, 2019, the Court held a hearing on the motion, the record of which is incorporated herein. (Doc. 31). On March 21, 2019, the Eleventh Circuit issued an opinion in Lewis v. City of Union City, Georgia, 918 F.3d 1213 (11th Cir. 2019) (en banc), which provides a new test for evaluating comparator evidence. Both parties submitted supplemental briefing regarding Lewis's impact on this case. (Docs. 34, 35).

---

[1] Safelite states that Frazier incorrectly identified it in the Complaint, and its proper name is Safelite Fulfillment, Inc. (Doc. 12 at 1).

## I.    BACKGROUND

Safelite is a national provider of auto glass products and services, including repairing and replacing broken or damaged windshields. (Doc. 12-1 ¶ 2). Safelite maintains glass installation policies and procedures to which all technicians must adhere, including Operating Practice 7.3 (Doc. 12-1 at 13-25) and the SIKA AGR Technical Training Manual (Doc. 12-1 at 26-31), which are both incorporated into the Installation Compliance Agreement ("ICA") (Doc. 12-1 at 32-38). (Doc. 12-1 ¶ 7). These documents explain that technicians must properly prepare the glass area and the pinch weld by using required cleaners, primers, and Aktivators.[2] (Doc. 12-1 ¶ 8). Aktivator is a cleansing and activating agent which is designed to ensure a strong and durable bond between the polyurethane adhesive and the windshield. (Doc. 12-1 ¶ 9). A technician's failure to use Aktivator during the installation process may result in bond failure and ultimately jeopardize customer safety. (Doc. 12-1 ¶¶ 10-11). Thus, Safelite has a zero-tolerance policy for a technician's failure to use Aktivator or primer. (Doc. 12-1 ¶ 11).

In April 2016, Safelite hired Frazier, a black male, as a technician trainee at its Jacksonville location. (Doc. 17-1 at 33:24-34:5). As a trainee, Frazier

---

[2] The record contains references to "Aktivator," which appears to be a branded product, and "activator," which appears to be a generic name for the same substance. The Court will use Aktivator to refer to both, as it does not affect the merits of the case.

completed a training program and passed a certification exam, thereafter becoming a technician around August 2016. (Doc. 17-1 at 69:13-24). As a mobile technician, Frazier received work orders on his phone, obtained supplies from Safelite's Jacksonville location, and went to customers to replace their windshields. (Doc. 17-1 at 99:19-25). Frazier understood that a necessary step in installing windshields included using the required cleaners, activators, and primers. (Doc. 17-1 at 78:23-79:2). However, he was unaware that failing to use Aktivator might result in his termination, despite the language in the manuals explaining that failure to comply with Safelite's installation procedures might result in dismissal. (Doc. 17-1 at 79:3-12).

During his tenure as a Safelite technician, Frazier states that no supervisor or manager ever made inappropriate comments to him based on race. (Doc. 17-1 at 134:1-4). However, at some point, a coworker said in Frazier's presence, "Well, that's if you ain't black. Oh, I'm just playing, Jameel." (Doc. 17-1 at 132:14-133:4). Frazier does not know who made the remark, (Doc. 17-1 at 132:25-133:1), and he did not report it to anyone (Doc. 17-1 at 137:15-16).

Following Frazier's October 4, 2016 windshield installation on a customer's vehicle, on November 14, 2016, the customer brought her vehicle back to Safelite for repair under the Safelite warranty because she heard wind noises coming from the windshield. (Doc. 17-1 at 109:10-12; Doc. 17-2 at 70:19-23; Doc. 17-3 at 43:3-15). Another Safelite technician, Thomas Klepke,

performed the warranty work on the vehicle and discovered that Aktivator had not been used. (Doc. 17-1 at 107:6-18). Not knowing who performed the original work on the vehicle, Klepke reported the omission to Safelite's quality manager, Jacob Grajeda. (Doc. 17-1 at 107:12-14). Upon learning of his mistake, Frazier did not dispute that he failed to use Aktivator on the vehicle, though he stated that it was unintentional and apologized for the error. (Doc. 17-1 at 107:13-16, 109:19-20).

Safelite placed Frazier on administrative leave on November 15, 2016, pending an investigation into the incident. A committee consisting of Frazier's local management team, managers and executives at the district and regional levels, and human resources representatives held a conference call on November 18, 2016 to review the matter. (Doc. 17-3 at 50-53, 76). They discussed Frazier's failure to activate the windshield and decided to terminate him pursuant to Safelite's zero-tolerance policy for failure to use Aktivator. That same day, the local Safelite management team, including operations manager Randy Kenyon, store manager Andres Briceno, and Grajeda met with Frazier and terminated his employment. (Doc. 17-1 at 126:20-127:8).

In early 2017, Frazier filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations ("FCHR"). (Doc. 20-1 at 64-67). On September 29, 2017, Frazier filed a complaint against Safelite in the Circuit Court of the Fourth Judicial Circuit in and For Duval County, Florida. (Doc. 2).

On December 7, 2017, Safelite removed the case, invoking this Court's diversity jurisdiction. (Doc. 1). The complaint contains two counts brought under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq. ("FCRA"): (1) race discrimination (Count I); and (2) color discrimination (Count II).[3] (Doc. 2).

## II.    LEGAL FRAMEWORK

The FCRA protects employees from racial discrimination in the workplace, providing that "[i]t is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual . . . because of such individual's race . . . ." Fla. Stat. § 760.10(1)(a). A plaintiff can establish a prima facie case for discrimination either by direct evidence, which requires actual proof that the employer acted with a discriminatory motive when making the employment decision in question, Scholz v. RDV Sports, Inc., 710 So. 2d 618, 624 (Fla. Dist. Ct. App. 1998), or by circumstantial evidence, which typically requires a plaintiff to satisfy the four-prong test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4] Florida courts follow the framework set forth in

---

[3] Frazier stipulates that his color discrimination allegations are the same as his race discrimination allegations and that he is only pursuing a race discrimination claim under the FCRA. (Doc. 17-1 at 197:1-6). Thus, Count II is due to be dismissed.

[4] Frazier's claim is based solely on circumstantial evidence. (Doc. 15 at 8-21).

McDonnell Douglas for establishing a discrimination claim based on disparate treatment in the workplace through circumstantial evidence. See St. Louis v. Fla. Int'l Univ., 60 So. 3d 455, 458 (Fla. Dist. Ct. App. 2011); see also Pritchard v. Shands Jacksonville Med. Ctr., Inc., No. 3:04-CV-1229-J-32HTS, 2005 WL 2077310, at *2 (M.D. Fla. Aug. 26, 2005) ("Florida courts have held that decisions construing Title VII are applicable when considering claims under the FCRA since the FCRA was patterned after Title VII.").

To establish a prima facie case of discrimination based on circumstantial evidence, a plaintiff must show that he: (1) belongs to a protected class; (2) was qualified to do the job; (3) was subjected to an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. McDonnell Douglas, 411 U.S. at 802. After a plaintiff has shown a prima facie case of discrimination and, thereby, has raised the presumption of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002); Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The employer "need not persuade the court that it was actually motivated by the proffered reasons." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). "If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for

6

unlawful discrimination." <u>Corning v. LodgeNet Interactive Corp.</u>, 896 F. Supp. 2d 1138, 1144 (M.D. Fla. 2012) (citation omitted).

## III.   ANALYSIS

### A.   **Prima Facie** Case

Safelite argues that Frazier cannot establish a <u>prima facie</u> case because he has failed to satisfy the fourth element of the <u>McDonnell Douglas</u> test.[5] (Doc. 12 at 13-18). Thus, the issue before the Court is whether Frazier has identified a comparator of another race that was treated more favorably.

"When comparing the plaintiff's treatment to a non-protected employee, the plaintiff and the employee he identifies as a comparator must be 'similarly situated in all material respects.'" <u>McQueen v. Ala. Dep't of Transp.</u>, No. 17-13405, 2019 WL 1773270, at *3 (11th Cir. Apr. 23, 2019) (quoting <u>Lewis</u>, 918 F.3d at 1238-39). Ordinarily, similarly situated comparators "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff;" and "will share the plaintiff's employment or disciplinary history."[6] <u>Lewis</u>, 918 F.3d at 1227-28. Frazier and his comparators

---

[5] Because the first three elements of the <u>McDonnell Douglas</u> test are not in dispute, the Court will address them no further.

[6] Frazier states that "although it is not clear if the comparators 'share the plaintiff's employment or disciplinary history,' it is clear that Plaintiff did not

must be "sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" Id. at 1228 (quoting Young v. United Parcel Serv., Inc., 135 S.Ct. 1338, 1355 (2015)). "An employer is well within its rights to accord different treatment to employees who are differently situated in 'material respects'—e.g., who engaged in different conduct, who were subject to different policies, or who have different work histories." Id.

Safelite states that Frazier was terminated because he failed to use Aktivator when installing a customer's windshield. Frazier argues that there are three white technicians who committed comparable acts but were not fired. (Doc. 15 at 5). The Court first addresses Frazier's most similar proffered comparator: Kirk Pruett, a technician who allegedly failed to use Aktivator during a windshield installation. (Doc. 17-1 at 163:12-164:2). Frazier testified that he was working with Pruett on a vehicle in a corporate parking lot, and when Frazier reached for the Aktivator, Pruett said, "I don't activate." (Doc. 17-1 164:1-7). Other than that, Frazier could not recall many specific details of the occurrence. Despite Frazier's allegations, Pruett testified that there has never been a time that he did not use Aktivator (Doc. 12-6 at 5:18-23), and neither

_____

have any disciplinary history, thus it would be impossible for any comparator to have less disciplinary history. Moreover, previous employment history would not be material here, where the relevant issue is termination for violation of a rule (Operating Practices [sic] 7.3) as opposed to a comparison of comparators' qualifications." (Doc. 35 at 3). As Frazier has not pointed to any evidence for the Court to evaluate on this point, the Court will not consider it further.

Grajeda nor Kenyon recalled Pruett failing to ever use Aktivator on a customer's vehicle (Doc. 17-2 at 74:12-14; Doc. 17-3 at 41:24-42:6).

Notably, Frazier testified that he did not report Pruett's failure to use Aktivator to anyone either at the time of the incident (Doc. 17-1 at 174:9-11), or when he was terminated for the same conduct (Doc. 17-1 at 178:20-180:24). He further testified that he was unaware if any manager was ever notified of the incident. (Doc. 17-1 at 202:21-25). For these reasons, as a matter of law, Pruett is not a valid comparator, as the Eleventh Circuit has determined that "proffered comparators' actions are only relevant if it is shown that the decision maker knew of the prior similar acts and did not discipline the rule violators." Summers v. City of Dothan, 444 F. App'x 346, 348 (11th Cir. 2011) (citing Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989)). "Knowledge of a prior act cannot be imputed on a decision maker, because '[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.'" Id. (quoting Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001)). As Frazier has failed to demonstrate that any Safelite decision maker was aware of Pruett's alleged failure to use Aktivator, Pruett is not a relevant comparator. See Embry v. Callahan Eye Found. Hosp., 147 F. App'x 819, 829 (11th Cir. 2005) ("Where employees have engaged in similar conduct, but the supervisor is not aware of one employee's conduct, this conduct may not be considered in determining whether the employees are 'similarly situated.'").

Frazier also identifies as comparators three Safelite individuals who he states failed to use the proper tools for windshield installations. He names Tim O'Quinn and Steven Salts, who allegedly used a cold knife during installations instead of a Safelite proprietary tool called EZI-wire, but were not terminated for that conduct.[7] (Doc. 15 at 17-9). He also proffers Pruett again, but for different conduct: hand-setting a windshield. (Doc. 15 at 18). Frazier attempts to equate his own conduct with that of O'Quinn, Salts, and Pruett by describing them as "violations of safety-related provisions of Operating Practice 7.3." (Doc. 15 at 5, 17). However, his argument is unavailing; simply because the conduct falls under the same heading in the Safelite handbook or involves safety does not make it sufficiently similar to satisfy <u>Lewis</u>, which instructs that similarly situated comparators will have engaged in the same basic conduct as the plaintiff. Here, the comparators' conduct is fundamentally different than Frazier's: use of tools and methods that Frazier believed to be unsanctioned by Safelite is not similar in "all material respects" to Frazier's failure to use Aktivator, a critical bonding agent that helps ensure the windshield remains in place following installation.

---

[7] Frazier testified that a cold knife is a tool that helps a technician "speed up the process." (Doc. 17-1 at 143:2-4). Presumably, the process he refers to is windshield installation.

Indeed, courts in the Eleventh Circuit routinely find that where a comparator's conduct or violation is "less serious," he is not similarly situated. See Ganpath v. Advance Stores Co., No. 10-60036-CIV, 2011 WL 6069336, at *9 (S.D. Fla. Dec. 6, 2011); Miller-Goodwin v. City of Panama City Beach, Fla., No. 5:08-CV-228/RS/EMT, 2009 WL 10697303, at *5 (N.D. Fla. Apr. 20, 2009) ("Employees who commit more or less serious violations are not similarly situated comparators."), aff'd, 385 F. App'x 966 (11th Cir. 2010). Even the dissent in Lewis recognizes that a proper comparator must have been involved in "only acts of 'comparable seriousness'—that is, behavior that, when considered by the employer, would necessarily trigger the same employment decision" by the employer. Lewis, 918 F.3d at 1246 (Rosenbaum, J., dissenting). Here, Frazier uses the concept of "safety" as a red herring to make using a cold knife or hand-setting a windshield seem more comparable to his failure to use Aktivator. (Doc. 15 at 18). However, the undisputed record proves otherwise.

Safelite requires the use of Aktivator because failure to do so jeopardizes the customer's safety. (Doc. 17-2 at 25:6-12). By contrast, Safelite discourages use of the cold knife primarily because it is a branding issue—Safelite wants to distinguish itself from other auto glass companies by touting that it uses the EZI-wire, which causes less damage to the pinch weld. (Doc. 17-3 at 40-41). In addition, the EZI-wire is safer for installers, resulting in fewer shoulder injuries for technicians. (Doc. 17-3 at 41:12-15). As such, Grajeda and Kenyon testified

11

that although Safelite opposes the use of a cold knife, the company has not banned it. (Doc. 17-2 at 73:10-17; Doc. 17-3 at 39:3-41:15).

Similarly, the record reflects that hand-setting windshields is not prohibited and even may be required in certain situations. (Doc. 17-1 at 152:9-20; Doc. 17-2 at 59:2-24). Grajeda testified that while a technician's use of hand-setting, rather than using Tru Seal,[8] presents an opportunity for coaching and correction because this technique may disturb the Aktivator, it is not part of Safelite's zero-tolerance policy.[9] (Doc. 17-2 at 56-58). Only failure to use Aktivator or primer falls under the zero-tolerance policy, as it is a much more serious offense than use of a cold knife or hand-setting a windshield. (Doc. 17-2 at 25:20-26:7). Frazier has set forth no evidence that O'Quinn, Salts, or Pruett's conduct was as serious as his in that it jeopardized customer safety, Safelite's chief concern when a technician fails to use Aktivator. (Doc. 17-2 at 25:6-12).

On this record, Frazier has failed to meet his burden of demonstrating that the conduct of O'Quinn, Salts, or Pruett was similar in all material respects to his own. By offering these individuals as comparators, Frazier asks the Court

---

[8] Grajeda testified that Tru Seal is a device that is applied to the driver's side door glass, and it has an arm attached to the windshield. When the two arms are connected, Tru Seal swings the glass around and helps the technician set it. (Doc. 17-2 at 55-56).

[9] According to Grajeda, contamination of the Aktivator may result in leaks but will not result in complete bond failure, as is the case with a failure to use Aktivator at all. (Doc. 17-2 at 57-58).

to second-guess Safelite's disciplinary decisions by comparing apples with oranges, a practice impermissible in the Eleventh Circuit. See Smalley v. Holder, No. 09-21253-CIV, 2011 WL 649355, at *7 (S.D. Fla. Feb. 22, 2011) (granting summary judgment where plaintiff failed to establish a prima facie case of discrimination because he failed to offer proper comparators). Accordingly, Frazier cannot demonstrate that he was treated less favorably than a similarly-situated individual outside his race, and thus, he fails to establish a prima facie case of race discrimination.

## B.  Circumstantial Evidence of Discrimination

Although Frazier's case fails under the McDonnell Douglas framework, he argues that he can still survive summary judgment if he provides "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed–Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (citations omitted); Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012) ("The McDonnell Douglas framework is not, however, the only way to use circumstantial evidence to survive a motion for summary judgment, and a 'plaintiff's failure to produce a comparator does not necessarily doom [her] case.'") (citation omitted); (Doc. 15 at 10-20).

Safelite argues that no Florida court has adopted the "convincing mosaic" standard under the FCRA, and therefore the Court should decline to apply it

here. (Doc. 20 at 9) (citing <u>Johnson v. Great Expressions Dental Ctrs. of Fla., P.A.</u>, 132 So. 3d 1174, 1178 (Fla. Dist. Ct. App. 2014) (noting that "no Florida court has adopted or even mentioned the 'convincing mosaic' standard")). Other federal courts in Florida have encountered precisely this situation, and—like this Court—have been "unable to locate . . . any case in which a Florida court has adopted a 'convincing mosaic' standard under the FCRA." <u>Tulloch v. Regions Bank</u>, No. 9:17-CV-81024, 2018 WL 4003288, at *4 (S.D. Fla. Aug. 17, 2018).[10] Similarly, Frazier has not identified any cases which fit this bill. As other courts have held, "for this reason," Frazier's racial discrimination claim fails as a matter of law.[11] <u>Id.</u>

Even if the Court were to consider whether Frazier has presented evidence that shows a "convincing mosaic" of racial discrimination, his evidence is insufficient to create a genuine issue of material fact because he has not put forth proof that is "comparably powerful" to evidence that the plaintiff was treated less favorably than a similarly situated offender. <u>Bell v. Crowne Mgmt., LLC</u>, 844 F. Supp. 2d 1222, 1234 (S.D. Ala. 2012); <u>see</u> <u>Holland v. Gee</u>, 677 F.3d

---

[10] The <u>Tulloch</u> court considered FMLA claims pursuant to its federal question jurisdiction and FCRA claims under its supplemental jurisdiction.

[11] However, Florida courts follow Title VII case law in evaluating FCRA race discrimination claims, and the Eleventh Circuit allows for analysis of convincing mosaic arguments. Therefore, the Court will alternatively address Frazier's claims under this framework.

1047, 1063 (11th Cir. 2012) (convincing mosaic found where the fired employee was treated differently after she informed her employer of her pregnancy, her employer even admitted that the employee was treated differently because of her pregnancy, and the credibility of the ultimate decision-maker was heavily challenged at trial even far beyond the evidence rebutting his proffered reasons for firing the employee).

Here, Frazier identifies myriad reasons for which the Court should find circumstantial evidence of discrimination, including: Safelite fails to follow its progressive discipline policy; the zero-tolerance policy is unwritten and inconsistently enforced or not enforced; Safelite engages in suspect business practices; Frazier had excellent performance evaluations; all examples of similarly situated employees outside the protected class who were fired for failing to activate were terminated after Frazier and after he raised discrimination concerns; and similarly situated employees were treated differently. (Doc. 15). Frazier also argues that he was subjected to racially offensive remarks in the work place. (Doc. 15 at 8, 20). For the following reasons, his contentions are unavailing.

Without citing to the record, Frazier argues that Safelite engages in "disparate application" of its progressive discipline policy because it metes out different forms of punishment for violations of Operating Practice 7.3. (Doc. 15 at 17). He makes variations of the same argument regarding Safelite's allegedly

inconsistent enforcement of the zero-tolerance policy and suspect business practices.

Safelite has a progressive discipline policy that, according to Grajeda, begins with a verbal coaching session, first written warnings, second written warnings, final written warnings, and finally, termination. (Doc. 17-2 at 30:13-19). Frazier argues that Grajeda's statements that he has observed multiple employees violate practices listed in Operating Practice 7.3 who were not terminated constitute circumstantial evidence of discrimination. However, in characterizing Safelite's disciplinary decisions as "suspect," Frazier ignores the wide variety of practices listed—from failure to convey drive time information to customers to failure to activate or prime—and the disparate severity of potential infractions.

Moreover, where a company does not follow a progressive discipline policy in every case, its failure to conform to the policy does not establish pretext. See Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 874 (11th Cir. 2011); see also Martin v. Estero Fire Rescue, No. 2:13-CV-393-FTM-29DN, 2014 WL 3400974, at *10 (M.D. Fla. July 11, 2014) (where employer had discretion to terminate employees for any failed drug test, the alleged failure to follow the progressive discipline policy cannot show pretext); Vertrees v. Am. Vulkan Corp., No. 8:10-CV-2164-T-24, 2012 WL 95306, at *8 (M.D. Fla. Jan. 12, 2012) ("Since the disciplinary policy afforded discretion as to whether the steps could be skipped,

16

the failure to adhere to the steps is not evidence of pretext."). Here, Grajeda testified that "Safelite has the ability to fluctuate that [the progressive discipline policy] at any time depending on the infraction." (Doc. 17-2 at 30:13-23). Moreover, the record reflects that Safelite's ICA provides for the possibility of immediate dismissal for failure to comply with its installation methods or tool usage policy (Doc. 12-1 at 34, 36), and that Safelite has terminated numerous employees of various races for violating the ICA, including failure to prime or activate (Doc. 12-1 ¶ 13). Thus, this argument is unavailing.

Frazier's arguments regarding enforcement of the zero-tolerance policy are similarly unpersuasive. Although the zero-tolerance policy is not in writing, the ICA provides that failure to adhere to the approved installation methods or tool usage policy may result in immediate dismissal. (Doc. 12-1 at 36). Frazier knew Safelite's procedures required him to use Aktivator, and he admittedly forgot to comply. (Doc. 17-1 at 78:23-79:2, 83:2-24). Moreover, Safelite has submitted uncontroverted evidence that it fired similarly situated employees outside the protected class for failure to activate or prime windshields both before and after Frazier brought allegations of race discrimination against it. (Doc. 12-1 ¶ 13). Kenyon testified that every technician who fails to apply activator is automatically terminated. (Doc. 17-3 at 61:16-62:4). Accordingly, Safelite convened a committee to confirm that Frazier had failed to activate a windshield and take the appropriate disciplinary steps. (Doc. 17-3 at 50:15-

51:12, 53:1-5). It does not demonstrate, as Frazier asserts, that termination was discretionary. (Doc. 15 at 16).

In addition to Safelite's allegedly inconsistent disciplinary procedures, Frazier states that he "was subjected to racially offensive remarks in the work place."[12] (Doc. 15 at 8, 20). Specifically, Frazier testified that at some time during his employment with Safelite, he heard a co-worker, whose name he does not remember, say "Well, that's if you ain't black. Oh, I'm just playing, Jameel." (Doc. 17-1 at 132:25-133:4). He could not specifically recall whether quality manager Pat Midcap was present when the comment was made, and he did not report the comment to anyone. (Doc. 17-1 at 136:5-16, 137:15-16). Further, he could not recall any other race-related comments by colleagues nor managers, stating that he "never really felt like [he] was uncomfortable in [his] own skin until [he] . . . lost [his] job." (Doc. 17-1 at 133:10-17, 134:1-4).

Under Eleventh Circuit precedent, this single, isolated remark is "too weak to raise a genuine fact issue." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010) (single stray remark "Cubans are dumb," which was not made by one of the ultimate decision makers, was too weak to raise a genuine fact issue); Ritchie, 426 F. App'x at 873 ("stray remarks that are 'isolated and unrelated to the challenged employment decision' are insufficient

---

[12] Although Frazier states he was subjected to racially offensive remarks—plural—he only describes one remark in his deposition testimony.

18

to establish pretext") (citation omitted). Frazier has not shown that the remark, which was not alleged to have been made by or reported to a decision maker, was related temporally or substantively to his termination. As such, the stray remark is insufficient to create a genuine issue of material fact.

Finally, the Court will briefly address Frazier's remaining arguments. Frazier states that all similarly situated employees outside the protected class who were fired for failing to activate were terminated after Frazier was fired and after he raised discrimination concerns. With this argument, Frazier implies that after firing him and then becoming aware of his charges of racial discrimination, Safelite fired numerous employees of all races to make it seem like his discharge was pursuant to a zero-tolerance policy. (Doc. 15 at 17; Doc. 22 at 5). However, while Frazier was terminated in November 2016, he did not raise allegations of race discrimination until he filed a Charge of Discrimination with the EEOC and the FCHR on February 14, 2017.[13] (Doc. 20 at 6; Doc. 17-1 at 139). The record reflects that similarly situated employees outside the protected class were terminated under the zero-tolerance policy for failure to

---

[13] The parties cite different dates for the filing of the Charge of Discrimination with the EEOC and the FCHR. Safelite states the charge was filed on February 14, 2017, but that is the date Frazier signed the document. (Doc. 20-1 at 64-67). In his complaint, Frazier states that he filed the charge on March 3, 2017. (Doc. 2 ¶ 7). The charge itself has a date received stamp of March 6, 2017. For the purposes of deciding this motion, the Court will use the earliest date, February 14, 2017, which is most favorable to the non-moving party.

activate or prime before February 14, 2017, including Edwin Reichardt (December 15, 2016) and Jereme Price (January 26, 2017), both Caucasians, and Angel Ortiz (December 16, 2016),[14] who is Hispanic or Latino, among others. (Doc. 12-1 at 3-4; Doc. 17-2 at 26:8-12). Thus, while it is true that Safelite has not provided evidence that it terminated any technicians for failure to activate before Frazier was terminated, it fired several others after his termination and before he filed charges of discrimination. Moreover, given Frazier's failure to present a <u>prima facie</u> case, it is not Safelite's burden to show that it fired technicians for the same conduct before it fired Frazier; rather, it is Frazier's burden to show there is sufficient circumstantial evidence to survive summary judgment. <u>Hamilton v. Southland Christian Sch., Inc.</u>, 680 F.3d 1316, 1320 (11th Cir. 2012) (the fundamental question then remains whether the plaintiff has presented circumstantial evidence sufficient to raise a reasonable inference of intentional discrimination). Given the lack of evidence supporting the argument that Frazier's termination was based on his race, the Court finds this speculative argument insufficient to create a genuine issue of material fact.

Next, Frazier cites no evidence of "excellent performance evaluations," and therefore this argument does not support an inference of discrimination.

---

[14] At the hearing, Safelite could not cite testimony confirming that Ortiz was terminated for failure to activate. However, Grajeda testified at his deposition that Ortiz was fired for such misconduct. (Doc. 17-2 at 26:8-12).

(Doc. 15 at 14). Regardless, Safelite terminated Frazier for failure to follow its policy of using Aktivator; he could have had positive performance reviews, but his failure to use Aktivator was subject to the zero-tolerance policy, rendering his past performance irrelevant. See Armor v. Fed. Express Corp., No. 1:12-CV-2719-TWT-JSA, 2014 U.S. Dist. LEXIS 94429, at *33 (N.D. Ga. June 9, 2014) (plaintiff's consistently positive performance reviews did not show pretext because he was terminated for perceived violations of the company's acceptable conduct policy and leadership failure, neither of which were contradicted by a history of generally positive reviews). Further, for the reasons explained supra, Part III.A., Frazier's arguments concerning his alleged comparators are unavailing.

Even taking all of Frazier's arguments together, the Court sees no evidence of a "convincing mosaic" of racial discrimination in this record. Safelite technicians of various races were terminated for failure to activate windshields in Florida before Frazier filed charges of racial discrimination. Frazier's termination was no different. Thus, he has failed to raise a genuine issue of material fact, and Safelite is entitled to summary judgment.

Accordingly, it is hereby

**ORDERED:**

21

1.    Count II of the Complaint (FCRA color discrimination) (Doc. 1 ¶¶ 34-39), which Frazier stipulates is the same as Count I (FCRA race discrimination), is **DISMISSED with prejudice**.

2.    Defendant Safelite Group, Inc.'s motion for summary judgment as to Count I (Doc. 12) is **GRANTED**.

3.    The Clerk shall enter judgment in favor of Defendant Safelite Group, Inc. and against Plaintiff Jameel Frazier.

4.    The Clerk shall close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 5th day of June, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

sej
Copies:

Counsel of record